RANDY S. GROSSMAN
United States Attorney
CONNIE V. WU
Assistant U.S. Attorney
California Bar No. 297177
United States Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
(619) 546-8592
Connie.Wu@usdoj.gov

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| UNITED STATES OF AMERICA, | Case No.: 22-CR-1241-JAH |
|---|---|
| Plaintiff, | **(1)  NOTICE OF APPEAL OF MAGISTRATE JUDGE'S ORDER SETTING BOND;** |
| v. | |
| MICHAEL SEAN TRIPPE (1),  aka Thumper, | **(2)  MOTION FOR STAY PENDING APPEAL** |
| Defendant. | |

The UNITED STATES OF AMERICA, by and through its counsel, Randy S. Grossman, United States Attorney, and Connie Wu, Assistant United States Attorney, hereby files this Notice of Appeal of the Order Setting Bond in the above-captioned case entered by the Honorable Michael S. Berg, Magistrate Judge, on June 16, 2022, and respectfully moves for an order staying the bond order until this Court has resolved the appeal.

//

//

//

//

//

//

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I**

**INTRODUCTION**

The United States respectfully appeals the Magistrate Judge's order that Defendant be released on a personal appearance bond in the amount of $400,000, secured by two financially responsible adults with a trust deed, home detention, and a Full Fourth Amendment waiver, that extends to the home, vehicle, and cell phone. *See* Dkt. 28.

The United States submits that it met its burden of proof that Defendant should be detained pending trial both because Defendant poses a serious risk of flight and is a danger to the community and others. As described in further detail below, Defendant orchestrated the victim's kidnapping with his codefendant, Brett Wenbourne, and tried to kill Person 1 by stabbing him in the chest with a knife, which punctured his lung and would have killed Person 1 without prompt medical attention. This assault with a dangerous weapon was committed in aid of racketeering. Defendant is a validated and documented member of the Aryan Brotherhood (which his counsel admitted at the detention hearing), and he stabbed the victim with a knife in this case because he believed that the victim was making a false claim of Aryan Brotherhood membership. Defendant is a flight risk and danger to the community and others and should therefore be detained.

**II**

**STATEMENT OF THE CASE**

On June 3, 2022, Defendant was indicted on one count of assault with a dangerous weapon in aid of racketeering, in violation of 18

U.S.C. § 1959(a)(3), as well as aiding and abetting in violation of 18 U.S.C. § 2. Defendant was hospitalized due to his use of a (prescribed) drug that is prohibited by the federal jails and subsequently arraigned by video on June 6, 2022.

At Defendant's initial appearance on June 10, 2022, the United States moved to detain based on risk of flight and danger to the community. A detention hearing was held on June 16, 2022.

On June 16, 2022, the Magistrate Judge entered an order that Defendant be released on a personal appearance bond in the amount of in the amount of $400,000, secured by two financially responsible adults with a trust deed, as well as home detention, and a Full Fourth Amendment waiver, that extends to the home, vehicle, and cell phone. *See* Dkt. 28.

For the first six weeks following the detention hearing, it did not appear as though Defendant would be able to meet the conditions set by Magistrate Judge so release from custody did not appear likely. From July 6, 2022, to August 2, 2022, Defendant submitted various deficient bond packages. Each time, the Chief of the Asset Recovery unit informed defense the multitude of ways in which each bond package was legally deficient.

On August 3, 2022, Defendant submitted a bond package and asked for hearing if it would not be approved by the United States. The United States requested a *Nebbia* hearing and surety examination, which is currently set for August 16, 2022. Throughout this process, the Magistrate Judge and defense counsel have been aware of the United States' request to exercise its right such hearing in the event the

1  Defendant were to present a bond package the Magistrate Judge might
2  sign.

3                                   **III**

4                                **ARGUMENT**

5      This Court reviews the Magistrate Judge's bond order *de novo*.
6  *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990). The
7  Court "should review the evidence before the magistrate and make its
8  own independent determination whether the magistrate's findings are
9  correct, with no deference." *Id*. "[T]he district court is not required
10 to start over in every case, and proceed as if the magistrate's
11 decision and findings did not exist," but "[i]t should review the
12 evidence before the magistrate and make its own independent
13 determination whether the magistrate's findings are correct, with no
14 deference. If the performance of that function makes it necessary or
15 desirable for the district judge to hold additional evidentiary
16 hearings, it may do so." Id. at 1193.

17     Based on the arguments made during the detention hearing and
18 below, Defendant is a flight risk and poses a danger to another person
19 and the community.

20 **A.   Risk of Flight**

21     Under the § 3142(g) factors, Defendant poses a serious flight
22 risk.

23         **1.   Nature and Circumstances of the Offense**

24     Defendant is charged with one count of Assault with a Dangerous
25 Weapon in Aid of Racketeering (VICAR), in violation of 18 U.S.C. §
26 1959(a)(3) and 2. The charge arises from his attempted murder of

27

28 *NOTICE OF APPEAL AND MOTION TO STAY*                      22-CR-1241-JAH
   *DETENTION ORDER PENDING APPEAL*

                                    4

Person 1 on December 7, 2020 when he stabbed the victim in the chest with a knife because he believed that Person 1 had falsely claimed to be a member of the Aryan Brotherhood. Once Defendant realized he had made a mistake, he apologized to the victim but asked him to drive elsewhere before seeking medical attention because Defendant lived so close to the crime scene. Defendant explained to the victim that that he is tired of people claiming to be someone that they are not and that he was going to start whacking people for misrepresenting themselves. The victim managed to drive himself to a nearby gas station, where he began to bleed out and collapsed. Medical workers informed the victim he would have died without immediate medical attention. Defendant's stabbing caused a two-inch wide chest wound, which punctured Person 1's lung and caused it to collapse. Defendant is facing up to 20 years imprisonment if convicted. The nature and circumstances of the offense thus create a serious risk of flight.

**2.  Weight of the Evidence**

As the Magistrate Judge found, the weight of the evidence favors detention because there is probable cause to believe that he committed the offense. The weight of the evidence in this case is particularly strong because the government's case does not rest on the victim's testimony. In fact, a bystander witness with no affiliation to any of the parties called 911 and narrated the confrontation to law enforcement as it unfolded and explained that his own experiences with gangs growing up led him to believe the confrontation he witnessed was gang-related. He later positively identified the Defendant by photo. Phone records and GPS data also corroborate Person 1 and the

*NOTICE OF APPEAL AND MOTION TO STAY
DETENTION ORDER PENDING APPEAL*                               22-CR-1241-JAH

bystander's accounts of the stabbing. Indeed, the weight of the evidence is very strong.

### 3.   History & Characteristics of Defendant

#### a.   Physical and mental condition

The Magistrate Judge stated that "he can get adequate medical treatment in custody," so he deemed this factor to be neutral. Although Defendant has more medical needs than the average detainee, there is no evidence that the Bureau of Prisons has been unable to adequately address them thus far.

#### b.   Family Ties

Defendant has strong family ties in the district, and his father-in-law and wife attended the detention hearing, so the Magistrate Judge found this factor weighs in favor of setting bond.

#### c.   Employment

Defendant sells clothing with his "Plead 5" logo at various booths along with this wife, so the Magistrate Judge found this factor weighs in favor of setting bond.

#### d.   Length of Residence

Defendant has lived in the San Diego almost his entire life, so the Magistrate Judge found this factor weighs in favor of setting bond.

#### e.   Community Ties

Defendant has community ties.  While the Magistrate Judge focused on his positive community ties vis-à-vis his family, this Court should consider the ways in which some of his community ties are highly anti-social and pose a danger to the community and others. In particular,

Defendant is a documented and self-admitted made member of the Aryan Brotherhood.

The Aryan Brotherhood is an extremely violent white supremacist gang that was formed in the California prison system in the 1960s and has expanded throughout the United States. The Defendant had to pay in blood to become a member because the Aryan Brotherhood has a blood in/blood out policy, which means that he was expected to murder someone someone to gain membership. And he is not permitted to leave or disassociate from the Aryan Brotherhood until he dies.

Defendant's membership has been documented in the California Department of Corrections (CDR) databases. Defendant has a shamrock tattoo, which is only reserved for validated members. And the fact that he is an Aryan Brotherhood member was even corroborated by one the defense witnesses he planned to call at his state attempted murder trial. Even defense counsel admitted at the detention hearing that Defendant is an Aryan Brotherhood member when he characterized the offense conduct as an "argument between two Aryan Brotherhood members." Gov't Exh. 1 at 32:13-14.

Defendant, therefore, is an active member of a violent gang.

### f.   Drug Abuse

Defendant was convicted of a drug misdemeanor eight years ago for which he completed diversion, so the Magistrate Judge found this factor weighs in favor of setting bond.

### g.   Criminal History

The Magistrate Judge found that Defendant had "significant criminal history, but most of it is over 20 years old, other than one

*NOTICE OF APPEAL AND MOTION TO STAY*
*DETENTION ORDER PENDING APPEAL*

22-CR-1241-JAH

misdemeanor eight years ago," so he deemed Defendant's criminal history to be neutral. The United States would ask this Court to re-evaluate the totality of Defendant's criminal history, but consider not only his violent convictions but also the violent criminal conduct he directed within the last three years, which the government uncovered during its wiretap interceptions.

As for his convictions, Defendant has a long and aggravated criminal history, which began at the early age of 15, starting with burglary, grand theft, and taking of a vehicle. That type of behavior persisted. When he was 18, he was convicted of possession of a stolen access device in connection with a robbery of a postal vehicle. In 1990, he was also convicted again of taking a vehicle without consent or receiving stolen property. Also in 1990, Defendant had a weapons trafficking or explosives conviction. Significantly, in 1992, he sustained an assault by a prisoner conviction. In 1996, he was charged with assault with a deadly weapon, but that count was ultimately dismissed in favor of a conviction on a lesser count involving a stolen vehicle. His most recent convictions appear to have occurred in 1999. After being sentenced to 7 years as a repeat auto theft offender, he committed battery while in prison sometime between 1999 and 2003, which led to another 8 years (consecutive) being added to his term. And in that case, the victim was a deputy chief warden at the prison. Although the Magistrate Judge was right to note that his convictions were twenty years old, it is worth nothing that his rap sheets indicate has only been out of custody since the 2012-2013 timeframe.

*NOTICE OF APPEAL AND MOTION TO STAY DETENTION ORDER PENDING APPEAL*                    22-CR-1241-JAH

The United States is aware that sometime between his release from prison in the 2012-2013 timeframe and December 2020, Defendant successfully battled cancer and went into remission. For purposes of detention, what is relevant about these health milestones is that it does not appear as though he reformed or aged out of violence; rather, his recovery from cancer (and the various related medical conditions and surgeries) appears to coincide with him resuming active engagement in violence. By December 2020, Defendant's physical strength was restored to the point of being able to physically stab Person 1 in the chest with a knife, nearly killing him.

But putting aside his ability to physically commit violence despite any purported medical conditions, it is equally if not more troubling to the government that the Defendant uses his status as the only member of the Aryan Brotherhood that is not behind bars in the San Diego area to direct and cause violence to be exacted against other people. In particular, the United States highlighted during the detention hearing two events captured during its 2019 wiretap interceptions of Defendant's associates and co-defendant that demonstrate his history and power to order local white supremacist criminal street gangs and outlaw motorcycle gangs to commit violent acts at his behest.

The most notable incident captured on the government's wiretaps and physical surveillance began on May 19, 2019. Investigators learned the Defendant was operating his clothing booth in San Marcos at the Harley-Davidson here in the district. This gathering included members of several outlaw motorcycle gangs, as confirmed by surveillance by

*NOTICE OF APPEAL AND MOTION TO STAY
DETENTION ORDER PENDING APPEAL*                                    22-CR-1241-JAH

several law enforcement officers. And during this event, a prospect and some members of the East County chapter of the Peckerwoods Outlaw Motorcycle gang got into a physical altercation with the Defendant and his associate. During this fight, someone hit the Defendant in the face, which broke a cardinal rule in the Aryan Brotherhood world because Defendant is a made member and cannot be touched out without approval from its governing body. Wiretap interceptions of local white supremacist gang leaders and physical surveillance of the area revealed a surge of known gang leaders and members from various white supremacist criminal street gangs and outlaw motorcycle gangs rushed to the scene, some armed with guns and knives, to back up Defendant and retaliate against the Peckerwoods on his behalf. By the time they arrived, however, law enforcement had flooded the scene to prevent further violence.

Based on toll records from Defendant's phone, the Government determined that in the days following the altercation, Defendant had several hundred contacts with a wide range of white supremacist street gang and outlaw motorcycle gang leaders and members including the Rekkers, Hell's Angels, Forbidden Saints, Henchmen, Supreme Power Skins, Chosen Few, Aryan Brotherhood, and the leader of the Peckerwoods. Four days after his fight with the Peckerwoods, an anonymous Crimestoppers tip revealed that one of the Peckerwoods had been assaulted and beaten with a baseball bat and his motorcycle stolen to atone for laying hands on the Defendant. The Crimestoppers tip, which was shared at the detention hearing and is attached to this motion as Government Exhibit 2 at 1, revealed that four days after the

fight with Defendant, three members of the Peckerwoods were forced at gunpoint by their Peckerwoods leaders to give up their their Harley-Davidson motorcycles and their club patches and were then "beat with a bat so bad one guy is still in the hospital." *Id.* The Crimestoppers tip went on to state, "They're scared to say anything because they were told they would get killed. The Aryan Brotherhood in San Diego member, Michael Trippe, Kelly English, and Neil and president of the Rekkers Motorcycle Club, ordered them to take care of the three and take their bikes and to give the address of the three so they can take them out in the near future if anybody talked. I am scared for my life and don't know what to do. I'm scared to talk to anybody. I don't know what to do or where to go next." Notably, Defendant's phone tolls from the days following his fight with the Peckerwoods are consistent with the claims that Defendant orchestrated this assault as retaliation for being struck during the fight on May 19, 2019.

The Crimestoppers tip provided specific identifying facts including naming Michael Trippe as a suspect, listing him as an Aryan Brotherhood member, and listing an alias of his, "Sean," which investigators know is his middle name that he uses with his friends and associates. One of the victims, Aaron Lang, refused to cooperate with the investigation, but because of the very serious injuries that he sustained during the beating with the baseball bat, the hospital was required to report it to law enforcement. Investigators obtained a search warrant for his phone which revealed information the government shared at the detention hearing. Photos obtained from Lang's phone revealed injuries to his face, *see* Government Exhibit 2 at 3. Text

*NOTICE OF APPEAL AND MOTION TO STAY DETENTION ORDER PENDING APPEAL*                    22-CR-1241-JAH

messages and photographs from Lang's phone also revealed that he had been beaten so badly that his kidneys were injured during the assault to the point of him "pissing blood," as he put it. *Id.* at 4. In this case, the victims' fear of reprisal and threats against their lives if they reported their attackers to law enforcement demonstrate why lack a of criminal conviction should not be dispositive in considering the extent of Defendant's criminal history because they are still relevant conduct.

In another 2019 incident captured on the government's Title III intercepts, Defendant used his standing as an Aryan Brotherhood member to extort an individual over a debt. Laffing Devils outlaw motorcycle gang prospect Jason Mitchell owed "Wild Bill" money and refused to pay his debt. According to intercepted communications Mitchell also confronted "Wild Bill" and essentially challenged him to a fight over the debt while "Wild Bill" was with his minor child about his refusal to pay the debt. "Wild Bill" complained to a Nazi Low Rider known to act as a secretary for Defendant. Defendant's secretary made phone calls and used his standing as Defendant's secretary to get the Laffing Devils to assault Mitchell to settle the unpaid debt, but "Wild Bill" and Defendant's secretary were not satisfied because the debt remained unpaid. The Laffing Devils leader refused to then also extort Mitchell for the money owed under the "hands laid, debt paid" principle. Wiretap intercepts revealed that after reaching out to several people, the Defendant's secretary called the Defendant to use his standing as a made Aryan Brotherhood member to persuade the Laffing Devils leader to change his mind. After receiving a phone call from Defendant, the

Laffing Devils leader changed his mind and called the Nazi Low Rider to assure him they would extort Mitchell for the money owed. What is more, the Laffing Devils leader attempted to pacify the Defendant's secretary by reassuring him that he meant no disrespect when he previously refused and told Defendant's secretary that he simply didn't realize who he was talking to until the Defendant called to enlighten him. During that call, Defendant's secretary asked, "Now you know who I am?" The Laffing Devils leader said, "I know who you are. I know Thumper (Defendant's known moniker) really well." The Laffing Devils leader assured Defendant's secretary that Mitchell "got smashed and his shit stripped. Let me reach out of there and see if I can get some money." Days later, Defendant's secretary bragged to "Wild Bill," "Once Thumper calls, he called me back with a different tone. He started stuttering. He found out who everyone was."

Neither of the incidents from 2019 that were captured on the government's wiretap investigation resulted in convictions, but they reveal that Defendant did not leave his violent ways behind and has been using his standing as an Aryan Brotherhood member to direct others to commit violence on his behalf, thereby insulating himself from criminal prosecution.

### 4. Record of Prior Appearances

The Magistrate Judge did not see any indication that Defendant failed to make any of his court appearances during the pendency of his state court attempted murder case, so the Magistrate Judge found this factor weighs in favor of setting bond. However, in his state case, a judge had forecasted early on that based on the preliminary hearing

*NOTICE OF APPEAL AND MOTION TO STAY DETENTION ORDER PENDING APPEAL*                    22-CR-1241-JAH

testimony, she was inclined to give Defendant an extremely light sentence, so Defendant had a unique incentive to continue making his court appearances that is not present here, whereas the federal government intends to seek the statutory maximum of 20 years against Defendant in the context of his crime of violence being committed in aid of racketeering for the Aryan Brotherhood enterprise.

   **5.   Danger to Any Persons or the Community.**

   As set forth below, Defendant is a *significant* danger to the community and others.

   Based on the totality of the factors discussed above, Defendant is, therefore, a serious risk of flight.

**B.   Danger to Another Person or Community**

   Defendant is also a danger to the community and others. The United States must establish by clear and convincing evidence that Defendant poses a danger to another person or to the community. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991); *see also* 18 U.S.C. § 3142(g). Here, the danger is clear and convincing based on the following:

   - **Defendant is an active member of violent white supremacist enterprise.**

   As discussed above, Defendant, by his own admission and that of his counsel, is a made member of the Aryan Brotherhood, a violent white supremacist prison gang that yields influence over a number of white supremacist criminal street and outlaw motorcycle gang members on the streets. He holds of the unique position of being the only made Aryan Brotherhood member that is not behind bars in the San Diego area. As

*NOTICE OF APPEAL AND MOTION TO STAY
DETENTION ORDER PENDING APPEAL*                        22-CR-1241-JAH

the United States has shown, his stature has emboldened him to stab people despite his diminished health and confers the authority for him to direct white supremacist gang members that abide by the Aryan Brotherhood to commit and threaten violence on his behalf and threaten victims with death if they report to law enforcement.

- **Defendant's physical condition does not limit his ability to direct violence using electronic devices.**

Although the Defendant's history of violence could alone justify a finding of danger, it is important that even if all the conditions the Magistrate Judge ordered had been in place in 2019, they would not have prevented the violence laid out above because the government has shown the ways in which Defendant can and has used text messages and phone calls to cause serious bodily injury to others at his behest.

- **Defendant's gang-related stabbing was conducted in a family-friendly public park with "people all over."**

Counsel for Defendant tried to paint the stabbing as simply a dispute "between two Aryan Brotherhood members." Gov't. Ex. 1 at 32:13-14. But such a characterization ignores the grave danger Defendant placed the public when he stabbed Person 1 in a park frequented by families in broad daylight that even counsel for Defendant admitted "was in the middle of a neighborhood with people all over." *Id.* at 32:22-23. Carrying out gang-related disputes in this manner demonstrates the way in which Defendant's brazen acts endanger innocent members of the public.

Defendant is, therefore, a danger to the community and others.

//

*NOTICE OF APPEAL AND MOTION TO STAY DETENTION ORDER PENDING APPEAL*                    22-CR-1241-JAH

1

**v**

2

<u>**CONCLUSION**</u>

3      For the foregoing reasons, the United States respectfully requests

4 that the Court enter an order detaining Defendant pending trial and

5 also enter an order staying the Magistrate Judge's Order setting

6 conditions of release while the Court considers its motion.

7

8 DATE: August 16, 2022            Respectfully submitted,

9                                 RANDY S. GROSSMAN
                                  United States Attorney
10

11                               /s/ *Connie Wu*
                                 Connie Wu
12                               Assistant U.S. Attorney

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28 *NOTICE OF APPEAL AND MOTION TO STAY*            16            22-CR-1241-JAH
*DETENTION ORDER PENDING APPEAL*