UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>   v.<br><br>MICHAEL SEAN TRIPPE (1),<br><br>                              Defendant. | Case No.: 3:22-cr-1241-RSH<br><br>**ORDER DENYING MOTION TO REDUCE SENTENCE**<br><br>[ECF No. 193] |

Defendant Michael Sean Trippe moves to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 56. The Government opposes this relief. ECF No. 193. As set forth below, the Court denies Defendant's motion.

**I.     BACKGROUND**

On July 11, 2025, this Court sentenced Defendant to 33 months of imprisonment in the custody of the Federal Bureau of Prisons (the "BOP"). ECF No. 179. The below-guidelines custodial sentence imposed by the Court took into account, among other things, the extensive evidence in the record relating to Defendant's physical conditions, as well as counsel's points about the risks that custody poses to someone with those conditions. At Defendant's request, the Court set an extended self-surrender deadline of October 23, 2025,

1

so that Defendant could undergo a scheduled stent exchange procedure followed by some time for recovery.

On October 20, 2025, on Defendant's motion and over the government's opposition, the Court postponed the self-surrender date to December 11, 2025, "to allow Defendant to participate in … scheduled follow up [medical] visits, and to allow counsel the full opportunity to undertake any further communications with the Bureau of Prisons with regard to Defendant's designation, placement, and/or medical needs." ECF No. 186. With the continued assistance of counsel, Defendant thereafter secured a designation to Federal Medical Center ("FMC") Rochester in Rochester, Minnesota, where he has been placed since his timely self-surrender. *See* ECF No. 193 at 5.

On March 25, 2026, Defendant filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 193. The motion is now fully briefed. *See* ECF Nos. 198 (government response in opposition), 199 (medical records), 201 (Defendant's reply).

Defendant advises that his projected release date is November 10, 2026. ECF No. 201 at 2. He seeks a reduction of his custodial sentence to that of time served. ECF No. 193 at 1.

## II.    LEGAL STANDARD

Once a district court imposes a sentence, that sentence "may be altered only in very limited circumstances." *United States v. Bryant*, 144 F.4th 1119, 1123 (9th Cir. 2025) (citation omitted). "With 18 U.S.C. § 3582(c)(1)(A), Congress provided one such 'narrow' exception—sometimes called compassionate release—for when 'extraordinary and compelling reasons' warrant reducing a defendant's sentence." *Id.* (citation omitted). Although the statute previously applied only to a motion filed by the BOP on a defendant's behalf, "in the First Step Act of 2018, Congress amended the statute to allow a defendant to file his own motion, provided he first exhausts administrative remedies within the BOP." *Id.* The parties do not dispute that Defendant's request to the warden here, and the warden's formal denial of that request, satisfy the exhaustion requirement.

2

"Sentence reduction under § 3582(c)(1)(A) is discretionary." *Id.* (citation omitted). A district court may exercise that discretion only when three conditions are met: "First, the district court must find that 'extraordinary and compelling reasons' warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A). Second, the reduction must be 'consistent with applicable policy statements issued by the Sentencing Commission.' Third, the district court must consider the sentencing factors in 18 U.S.C. § 3553(a)—including the nature of the offense and the defendant's characteristics—to determine 'whether the requested sentence reduction is warranted under the particular circumstances of the case." *Id.* (citations omitted).

## III.  DISCUSSION

### A.  Extraordinary and Compelling Reasons

Congress did not define "extraordinary and compelling reasons," but instead directed the U.S. Sentencing Commission, "in promulgating general policy statements" for § 3582(c)(1)(A), to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Accordingly, the Sentencing Commission promulgated a policy statement, Section 1B1.13 of the Sentencing Guidelines, that defines "extraordinary and compelling reasons" to include various medical circumstances, including two specific circumstances that Defendant invokes in his motion, discussed further below. *See* U.S.S.G. § 1B1.13(b)(1)(B)(i), (b)(1)(C); ECF No. 193 at 10-11.  The policy statement also includes a provision for "other reasons," restricted to reasons "similar in gravity" to the listed examples. U.S.S.G. § 1B1.13(b)(5); *see also Bryant*, 144 F.4th at 1124. "If a defendant cannot show 'extraordinary and compelling reasons' as defined in § 1B1.13, then he is ineligible for compassionate release." *Bryant*, 133 F.4th at 1124.

### 1.  *Specialized Medical Care Not Being Provided*

Defendant first argues that "extraordinary and compelling reasons" exist in that he is "suffering from a medical condition that requires long-term or specialized medical care

that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). He contends:

> BOP has already demonstrated, in just four months, that it cannot manage [Defendant's] needs. The stent removal without replacement, performed over the documented objection of his treating specialist, directly caused or materially contributed to the severe sepsis episode of January 2026. The delayed response to his symptoms upon onset staff questioning whether to even send him to the hospital nearly cost him his life.

ECF No. 193 at 10.

Defendant's motion explains that "[i]n the early hours of January 24, 2026, before the stent procedure could even be completed, Mr. Trippe went into full-blown symptoms of recurrent sepsis." ECF No. 193 at 6. Defendant states that "[b]y the time he arrived at the medical unit, he was in extreme distress," but "staff initially questioned the severity of his symptoms and debated whether to send him to the hospital at all." *Id.* The FMC staff determined to transfer him to the Mayo Clinic Hospital in Rochester, Minnesota, where he was admitted later in the day on January 24 to January 29, 2026. *Id.* During that hospital stay, on January 26, Defendant underwent a procedure to address biliary stent obstruction, resulting in stent removal. ECF No. 193-1 at 60. The discharge notes from the Mayo Clinic Hospital state that Defendant had a "history of … recurrent biliary obstruction requiring stent exchanges every 3-4 months," but that during the stent removal procedure, Defendant "had brisk spontaneous biliary drainage, so no additional biliary stents were placed." ECF No. 193-1 at 60.

In his motion, Defendant contends that the stent removal without replacement was inconsistent with prior advice given by Defendant's gastroenterologist at UCSD Health System. In a letter dated January 15, 2026, over a week before Defendant's admission at the Mayo Clinic Hospital, Defendant's UCSD gastroenterologist had "recommend[ed] continuing scheduled ERCP stent exchanges rather than stent removal." ECF No. 193-1 at

34. The gastroenterologist explained, "removing the stent could theoretically reduce the risk of stent-related infection, but in this patient, the likelihood of biliary obstruction and cholangitis without a stent is significantly higher." *Id.* The gastroenterologist further stated that replacing the stent "minimizes obstruction risk, and while ERCP carries procedural risks (including infection and pancreatitis), these are likely outweighed by the benefit of preventing recurrent cholangitis in a setting where emergent intervention is not readily available." *Id.*

Defendant's argument that "[t]he stent removal without replacement … *directly caused or materially contributed to* the severe sepsis episode of January 2026," ECF No. 193 at 10 (emphasis added), is inconsistent with the fact that Defendant's sepsis on this occasion preceded and precipitated his admission to Mayo Clinic Hospital and the subsequent stent removal. Additionally, although Defendant identifies a difference between what his own UCSD specialist recommended prior to the acute episode (stent replacement), and what the Mayo Clinic specialists decided to do in the course of the procedure on January 26 (stent removal), he does not address the reasons given by those specialists for that decision. More fundamentally, he has not established that the care he received at the Mayo Clinic Hospital amounted to the failure to provide "specialized medical care." U.S.S.G. § 1B1.13(b)(1)(C). Defendant had suffered from sepsis prior to his incarceration. *See* ECF No. 193 at 4; ECF No. 201 at 8. Similarly, although Defendant's episode of sepsis on January 24 was indisputably severe, and Defendant faults FMC staff for not transporting him to the hospital sooner that day, he has not established that the timing of his transfer constituted a deprivation of necessary care. His allegation that his new condition of hyperglycemia was the result of inferior care while in custody, ECF No. 193 at 7, is not supported by evidence.

The government adds that "[u]ltimately, Defendant's biliary was drained and his stent was replaced by Dr. Robert E. Kriachley, Mayo Clinic Division of Gastroenterology on March 25, 2026. By all accounts the procedure was successful and Defendant is

recovering without incident." ECF No. 198 at 15 (citations omitted). Defendant has not disputed this characterization.

The Court concludes that Defendant has not established "extraordinary and compelling" reasons under U.S.S.G. § 1B1.13(b)(1)(C).

### 2.    Diminished Ability to Provide Self-Care

Defendant argues in the alternative that "extraordinary and compelling" reasons exist because he is "suffering from a serious physical or medical condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B)(i); ECF No. 193 at 10. Defendant contends:

> Mr. Trippe cannot self-administer IV antibiotics when sepsis strikes. He cannot perform his own stent exchanges. He cannot self-monitor for the subtle signs of biliary obstruction that precede a crisis. He is entirely dependent on BOP medical staff … who have already shown they do not know his history, do not follow his specialist's instructions, and do not respond promptly to his emergencies.

ECF No. 193 at 10-11.

The government responds that "self-care" does not refer to an inmate's ability to treat his own medical condition without assistance, but instead to an inmate's ability to perform activities of daily living. ECF No. 198 at 11; *see United States v. Bailey*, No. 19-391 (JDB), 2025 WL 1114185, at *5 (D.D.C. Apr. 15, 2025) ("Courts generally interpret the phrase ['self-care'] to refer to a defendant's ability to independently ambulate, take care of personal hygiene, and perform other ADLs [activities of daily living] such as dressing, eating, and taking medication."). The government also cites recent medical records of clinical encounters from late March 2026 reflecting that Defendant, although experiencing pain following his March 25, 2026 stent replacement at the Mayo Clinic Hospital, is able to get out of bed, walk around his cell, stand for discussions with clinicians and

3:22-cr-1241-RSH

communicate in an alert and oriented manner, and receive and take his medication. ECF No. 198 at 12-13.

Defendant does not dispute that he can perform these tasks, but responds that "Ninth Circuit district courts addressing compassionate release in the COVID-19 context have treated self-care more broadly than a strict activities-of-daily living checklist." ECF No. 201 at 3. However, the examples that Defendant provides in the Covid-19 context are cases where the court did not analyze the "self-care" language, and indeed denied the motions for compassionate release. *See United States v. Gutierrez*, No. 1:11-cr-30009-AA-3, 2020 WL 4346933, at \*4 (D. Or. July 29, 2020); *United States v. Blumenstein*, No. 20-cr-9-DKW-1, 2021 WL 1655823, at \*4 (D. Haw. Apr. 27, 2021).

Although the Court agrees that Defendant would be unable to treat himself during future episodes of sepsis, for which surgical intervention may be needed, the Court is not persuaded that this medical need establishes "extraordinary and compelling" circumstances under U.S.S.G. § 1B1.13(b)(1)(B)(i), or "other reasons … similar in gravity" under U.S.S.G. § 1B1.13(b)(5).

**B.     Sentencing Factors in 18 U.S.C. § 3553(a)**

Additionally, the Court determines that the sentencing factors in 18 U.S.C. § 3553(a) do not warrant a reduction of Defendant's custodial sentence. The Court discussed at sentencing the aggravating and mitigating factors. The mitigating factors—including Defendant's remorse, rehabilitation, positive performance on pretrial release, family support, childhood disadvantages, and present physical condition—were and continue to be significant. But so are the aggravating factors discussed at sentencing. The additional information presented in Defendant's motion pertaining to his physical conditions and the care received while in custody do not, in the Court's view, warrant reducing his sentence to time served.

//

//

7

3:22-cr-1241-RSH

## IV.    CONCLUSION

For the reasons set forth above, Defendant's motion to reduce his sentence [ECF No. 193] is **DENIED**.

**IT IS SO ORDERED**.

Dated: May 22, 2026

_____
Hon. Robert S. Huie
United States District Judge

3:22-cr-1241-RSH